## HAMLIN v. FITCH.

A contract is not within the statute against usury, unless it be for the repayment of a greater value than the thing loaned, besides the advance of six per cent.

THIS was an action upon a joint and several obligation, given by the defendant, and one William Campbell, on the 28th day of February, 1785, for the payment of $16,839 in final settlement certificates, within six months from the date.

The issue joined, and found by the verdict of the jury, was,— "That the obligation was given for the loan of $16,839, in final settlement certificates; and that it was corruptly agreed, between the plaintiff, said Campbell, and the defendant, to give the plaintiff £1,000 in lawful money for said loan, for the term of six months, more than the lawful interest:  And that, in pursuance of said agreement, an obligation was, by said Campbell, given to the plaintiff therefor; — and that, therefore, said contract was usurious and oppressive," etc.

Mr. Halsey, and Mr. Peters, counsel for the plaintiff, moved in arrest of judgment, and for cause alleged,— That the issue joined was immaterial, as the obligation on which, etc. was given for final settlement certificates, which were, at the time of the loan, in a depreciating condition, and attended with a risk of the total loss thereof, within the term of six months, or a much greater depreciation in value, than the sum secured to the plaintiff by the note from Campbell:

Therefore, the contract not being for money loaned, but for a collateral article of a perishable nature, and the whole hazard of loss being upon the plaintiff, said contract is not usurious.

By the COURT. It appears from the verdict, in this case, that for a loan made the 28th day of February, 1785, of $16,839 in final settlement certificates, or certificates of balances due from the United States, it was agreed to give, and there was in fact given, the note now sued, being for the repayment of the like sum, and kind of certificates, at the end of six months, with lawful interest thereon; and also another note for £300 lawful money: — Which agreement, the jury find, was usurious, within the statute; — whether it could be so, is a question of law now moved in arrest.

To bring a contract within the statute, and the mischief it was made to prevent, it must be clearly for the repayment of a greater value than the amount of the loan, with an advance thereon, at the rate of six per cent. per annum. That it be of a greater quantity, though of the same kind of article, is not sufficient: If the article be of a fluctuating value, and from such change or diminution of its value, as from its nature, or the course of trade, it is subject to, — it may not, at the time of repayment, be worth more, or so much. A loan of one hundred bushels of salt, for example, in the year 1783, when it was at twelve shillings, to repay double the quantity at the end of one year, when it might have been worth but four shillings, would not come within the statute, be the price what it might at the year's end: Nor would it make a difference, if it was to repay 106 bushels of salt, and a sum of money besides, provided both of them might not amount to more than the value of the

loan, and six per cent. interest thereon.— With regard to the final settlement certificates, said to be loaned in this case; it is matter of public notoriety that they were, at the time of the contract, in a state of rapid depreciation, and that having no funds to rest upon, for principal or interest, it was wholly uncertain how low they would fall, and whether, at the end of six months, they would, if considered as merchandise (as they must be, to bring them at all within the description of the statute) be worth half so much as they were when loaned:   In which case the plaintiff, instead of gaining £300, would lose that sum, and the defendant gain it.   The loss by the depreciation was at the plaintiff's risk:   As he received in the £300 a premium for the risk, the rule of damages upon this note, would be the market value of the certificates, at the time they were to be repaid.— So was the case of Lathrop v. West, determined in this county, where the loan was of depreciating continental bills, and a sum in hard money was taken as a premium for risking the depreciation upon them.   There the depreciation happening to exceed the premium, the plaintiff lost the whole interest, and part of the principal, as might have been the case here.   The contract in this case, though in the form of a loan, was really in nature of a speculation, and bargain of hazard:   It depended upon a contingency, viz. that of depreciation, whether all, or how much of the principal, or value loaned, should be repaid, and which of the parties the speculation should ultimately favor; which takes the contract entirely out of the statute. See case of Morriset v. King, 2 Burrow's Report, 891; also Mason v. Abdey, Show. 8; Comb, 125; Holt, 738.— Though it may leave a question, how far the premium taken

for the risk in this case, was unconscionable, and could be relieved against in equity.— Judgment was, therefore, arrested.

DYER and PITKIN, JJ., dissenting.   The issue joined was material:   For the facts pleaded, and found by the jury, operate totally to destroy the plaintiff's security, and bar a recovery thereon.   Unless (as is objected in the motion) this borrowing and loaning, though described in the obligation itself to be on lawful interest, is incapable of drawing any interest whatever:   For, if it is capable of drawing lawful interest, it is capable of addition, if the parties please.   To suppose a contract which will carry the lawful interest, and at the same time cannot, by any possibility, be made to carry more, involves in it manifest absurdity.   The loan that will draw six per cent. may draw ten or twelve, if so agreed by the parties.

In the present case, if judgment is to be rendered for the plaintiff, will the court allow only the principal sum contained in the obligation, when, by the express contract of the parties, the same obligation equally secures the lawful interest thereon?   Clearly, there can be no severance.— The second note of $1,000, is found by the jury to be only for the consideration of the first sum lent.   Let a suit be commenced upon it, and upon the principles laid down in this case, a recovery must be had for the whole sum.   Will not the plaintiff, then, have recovered on the first suit, the principal sum loaned, and the legal interest; and will he not, on the second suit, have recovered a further sum of £300 lawful money?   The second judgment is either nothing, or

else it makes an addition above the six per cent. recovered by the first judgment.

The legislature well knew, that many arts and subtilties have been invented and practiced by usurers, to evade the law. This occasioned the legislature to be circumspect, and attentive to defeat them; and to enact generally, and not particularize specific modes of usury, which lead to evasion. The statute, therefore, is,— "That no person or persons whatsoever, upon any contract made, shall take, directly or indirectly, for loan of any moneys, wares, merchandise, or other commodities whatsoever, above the value of £6, for the forbearance of £100 for one year. And that all bonds, contracts, mortgages and assurances whatsoever, made for the payment of any principal, or money lent, or covenanted to be lent upon, or for usury, whereupon or whereby there shall be reserved, or taken, above the rate of £6 in the £100, as aforesaid,— shall be utterly void."— We might wish to save the plaintiff at least his principal in this case, as it is a large sum; but the words and sense of the statute are too strong to be thus evaded. For, if in the present case, there is a security for any principal, and that principal is comprehended in any one of the expressions in the act referred to, viz. moneys, wares, merchandise, or any other commodities, then it must be within the act.— If the plaintiff's motion in arrest prevail, it will be a determination that final settlement certificates, are not a principal in the obligation on which this action is brought, and that they are not money, wares, merchandise, or any other commodity whatsoever; and yet that they are a principal on which interest is secured, and for which the court must render judgment for the plaintiff to recover.

Hamlin v. Fitch.

The principal questions which arise in the law authorities, are upon the distinctions between a mere bargain and a loan: For a simple bargain, though a hard one, is not within the statute against usury: And usurers have endeavored to evade the law, by disguising the loan under the specious show of a bargain, and possibly on some risk. The judges have often been put to difficulty to uncover this disguise; but whenever it is disclosed, it proves fatal.— In the present case, there is no cover as to the loan; for it is so expressed in the obligation, and to be on interest till paid. It is an essential part of the pleadings, and a fact found by the jury, that there was at the same time, an obligation given for a further sum of one thousand hard dollars, on no other consideration, than as an additional interest to the six per cent. secured by the first, or principal obligation; and by the corrupt agreement of the parties. These facts being found true by the jury, the court have to determine whether the case is within the statute against usury. It is said not to be, because the note for $1,000, was in fact given to secure the depreciation only; and, therefore, it was all a bargain, and not in nature of a loan.—We find no precedents, or law authorities whatever, which save a contract out of the statute against usury, merely on account of the principal sum loaned being liable to become of less value at the time of payment, than at the time of the loan. True, that where the whole principal is at hazard on some contingency, such contract is not usurious; but that is not the present case. Consonant with these principles, were the whole course of judicial decisions in this state, during the term of the existence of what was called Old Tenor. This was a paper currency in a constant state of depreciation: Yet all obliga-

tions and loans, in that currency, were adjudged usurious, where they would have been so adjudged, if made in the established coin of the country.— A contrary construction of the law will entirely defeat the good design thereof, and open a door for every species of oppression which it is meant to prevent.